UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COR, LLC,<br><br>                                         Plaintiff,<br>         -v-<br><br>FIRST STANDARD FINANCIAL CO. LLC,<br><br>                                        Defendant. | 17 Civ. 2190 (PAE)<br><br>OPINION & ORDER |

PAUL A. ENGELMAYER, District Judge:

This decision resolves a letter motion by COR Clearing, LLC ("COR"), for reimbursement of attorneys' fees and expenses incurred during litigation against First Standard Financial Co., LLC ("First Standard"). *See* Dkt. 66. This action arose out of First Standard's repudiation of its obligations under a Fully Disclosed Clearing Agreement ("FDCA") that it had entered with COR. On January 15, 2019, shortly before the scheduled trial date, the parties filed a stipulation of voluntary dismissal, on terms unambiguously reflecting that COR had prevailed. The Court then terminated this case, subject to its resolution of the instant motion for fees. *See* Dkt. 70. For the reasons that follow, the Court, after careful consideration, finds that COR is entitled to fees and costs totaling $380,994.21, which represents an award of 5% less than the $386,614.50 in fees COR requested plus the full $13,710.43 in expenses it requested.

I. **Background**

    A.    **Factual Background**[1]

COR is an independent securities clearing firm. First Standard is an independent securities broker dealer. On December 1, 2016, the parties entered into the FDCA. JPTO at 3.

---

[1] The Court draws its account of the facts from the Joint Pretrial Order. *See* Dkt. 40 ("JPTO").

1

Under that agreement, COR was to be First Standard's exclusive clearing broker for seven years. *Id.* at 4. In exchange for its services, COR would be paid fees by First Standard. The FDCA also precluded First Standard from "engag[ing] in additional securities clearing relationships without the prior written consent of [COR]." FDCA § 10.1(c); *see also* JPTO at 4. The FDCA also provides for the recovery of attorneys' fees and costs incurred by a party attempting to enforce the FDCA. *See* FDCA § 9.1.

In February 2017, First Standard repudiated the contract, so as to move forward with its prior clearing broker. JPTO at 4. First Standard claimed that the Financial Industry Regulatory Authority ("FINRA") required it to continue with its prior broker. Dkt. 15 at 2. COR, for its part, alleged that FINRA, in fact, had approved the FDCA on December 13, 2016. JPTO at 7.

### B. Procedural History

On March 27, 2017, COR filed this lawsuit against First Standard. Dkt. 1. On April 12, 2017, COR filed an amended complaint. Dkt. 11 ("AC"). COR sought damages for breach of contract or, in the alternative, damages for breach of the duty of good faith and fair dealing, on the theory that First Standard never intended to abide by the contract but rather sought leverage with its prior broker. AC at 1–2.

On May 31, 2017, First Standard filed an Answer. *See* Dkt. 15 ("Answer"). It asserted that COR had failed to mitigate damages and had taken only "preliminary steps" under the FDCA, without ever performing clearing services. *Id.* at 12. Accordingly, First Standard argued, COR was not entitled to any damages. *Id.* at 12–13.

On October 22, 2018, COR filed a joint pretrial order, Dkt. 40, and proposed findings of fact and conclusions of law, *see* Dkt. 43. The joint pretrial order, while containing substantial stipulated facts, left blank the section calling for First Standard's articulation of its defenses. In

2

addition, COR also filed motions *in limine*, Dkt. 41, a supporting memorandum of law, Dkt. 42, and accompanying declarations, Dkts. 44–48. First Standard did not file any opposition to COR's motions *in limine*.

On November 19, 2018, COR filed a letter motion asking that the Court enter judgment in favor of COR. *See* Dkt. 61 ("COR Ltr."). COR explained that, in the joint pretrial order, First Standard had stipulated "to all of the law and facts necessary to prove COR's claims against" it, *id.* at 1, including First Standard's breach of its contractual duties under the FDCA. COR further noted that the FDCA contained alternative liquidated damages provisions and proposed to seek damages ($7,500 per month) consistent with the lowest mode of liquidated damages available under the FDCA. *See* COR Ltr. Ex. 2 at 2–3. On December 5, 2018, the Court directed First Standard to file a response by Thursday, December 13, 2018. Dkt. 62. On December 12, 2018, the Court granted First Standard's motion to extend their time to respond to December 20, 2018. *See* Dkt. 64. First Standard, however, never filed any such response.

On January 2, 2019, the Court issued an order granting COR's unobjected-to motions *in limine* and scheduling a final pretrial conference for January 10, 2019. Trial was scheduled to commence on January 22, 2019.

At the January 10, 2019 conference, the Court put on the record its bases for resolving the motions *in limine*. Dkt. 72 (Transcript of Jan. 10 conference) at 3–7. The Court then inquired of counsel for First Standard whether it opposed COR's pending motion for entry of judgment, based on First Standard's having stipulated to the facts establishing its contractual liability. Counsel replied that First Standard did not oppose the motion for entry of judgment against it, *id.* at 10, but reported that the parties were close to a negotiated settlement of the case by means of a stipulation of voluntary dismissal on terms that included the payment over time of damages and

3

an ongoing clearing relationship. First Standard asked that the Court briefly defer entry of judgment to allow a settlement to be reached, because the entry of a judgment, as opposed to a stipulation of voluntary dismissal, could impair First Standard's status with regulators and consequently its survival. *Id.* at 11–18. Jeremy E. Deutsch, Esq., COR's counsel, agreed to a brief deferral of entry of judgment, to enable the parties to finalize a stipulation of voluntary dismissal, provided that it was clear that COR would have the right to pursue a contractual award of attorneys' fees. *Id.* at 16. The Court approved this arrangement. *Id.* Consistent with it, on January 15, 2019, the parties filed a stipulation of voluntary dismissal. Dkt. 70.

As for the fee application, on January 10, 2019, the day of the final pretrial conference, Mr. Deutsch filed a declaration in support of COR's application for fees, with accompanying exhibits. Dkt. 66 ("Deutsch Decl."). COR seeks an award of $386,614.50 in legal fees and an award of $13,710.43 in costs incurred. On January 14, 2019, First Standard filed its opposition to the motion for fees. Dkt. 67 ("Def. Opp."). On January 15, 2019, COR filed a reply. *See* Dkt. 68 ("Pl. Reply").

## II. Applicable Standards Governing Fee Applications

Ordinarily, under the "American Rule," each party must bear its own attorneys' fees. However, where the parties have entered into an agreement that authorizes such recovery, courts in New York may award such fees. *See U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 3 N.Y.S.2d 470, 472 (2004).

The FDCA, under which COR brought this lawsuit, is such an agreement. It provides that "[e]ach party shall indemnify and hold harmless the other, and its controlling persons, officers, directors, agents, servants and employees (the 'Indemnified Party'), from and against costs, losses, claims, liabilities, fines, penalties, damages and expenses (including reasonable

4

attorney and accountant fees) . . . arising out of or resulting from any actual or alleged breach of this Agreement [or] the enforcement of this Agreement . . . ." FDCA § 9.1.

Reasonable fees may be awarded pursuant to such an agreement. *See Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 172 (2d Cir. 2009). A "reasonable" fee award reflects "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Id.* (internal quotations and citations omitted). "In reviewing a fee application, the district court examines the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case." *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997). The party moving to recover fees is to be compensated only for "hours reasonably expended on the litigation," not for "hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983). Where the Court finds the number of hours stated disproportionate to the work performed, the Court should reduce the stated hours accordingly. *See id.*; *Seitzman v. Sun Life Assurance Co. of Can.*, 311 F.3d 477, 487 (2d Cir. 2002).

Factors relevant to the determination of reasonable fees include: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Arbor Hill Concerned Citizens Neighborhood Ass'n v.*

5

*Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 187 (2d Cir. 2008) (internal quotation marks and citations omitted).

In determining whether the hours expended by counsel were reasonable, a court may also draw on its "first-hand knowledge of [the] litigation and its extensive contact with the parties." *Luciano*, 109 F.3d at 117. Where it is difficult to make line-item reductions to adjust for excessive billing, "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Rodriguez ex rel. Kelly v. McLoughlin*, 84 F. Supp. 2d 417, 425 (S.D.N.Y. 1999) (quoting *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (internal quotation marks omitted)); *see also N.Y. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1142, 1145–48 (2d Cir. 1983) (approving percentage reductions to correct for deficiencies in fee application, including "excessive claims for certain tasks" and "inadequate detail in documentation").

It is undisputed here that the FDCA authorizes a fee award to COR. By any measure, COR prevailed in this litigation. Indeed, COR would have been entitled to entry of judgment on January 10, 2019, and the Court would have entered such judgment, but for First Standard's request that the Court defer doing so to permit a settlement that also contained forward-looking terms to be consummated. The parties solely dispute whether COR's calculation of that award is reasonable. The Court accordingly considers the proper amount of the award of fees and costs.

**III. Application**

    **A. What Award of Fees and Costs is Reasonable?**

First Standard argues that the billing rates charged by Anderson Kill, P.C. ("AK"), COR's litigation counsel, are unreasonable. It further argues that AK's fee application reflects

"unreasonable, inflated, or duplicate fees, often hidden or masked in gigantic block-billing entries." Def. Opp. at 2.

The Court disagrees with these critiques. The Court finds that the rates charged by AK's timekeepers, the firm's hours billed, and the billing practices in this case are reasonable.

As to billing rates, AK's rates fall comfortably within the range of fees commonly approved in this District for estimable experienced counsel in complex commercial litigation. *See, e.g., Rubenstein v. Advanced Equities, Inc.*, No. 13 Civ. 1502 (PGG), 2015 WL 585561, at *6–7 (S.D.N.Y. Feb. 10, 2015) (finding hourly rate of $525 reasonable for highly experienced partners and $350 "blended" rate reasonable for associates); *Sidley Holding Corp. v. Ruderman*, No. 08 Civ. 2513 (WHP) (MHD), 2009 WL 6047187, at *26 (S.D.N.Y. Dec. 30, 2009), *adopting* 2010 WL 963416 (S.D.N.Y. Mar. 15, 2010) (noting that "recent fee awards within the district reflect hourly rates in the range of $450.00 to $600.00 for experienced partners, $350.00 for senior associates, $250.00 for junior associates, and $125.00 to $170.00 for paralegals"); *In re AOL Time Warner Shareholder Derivative Litig.*, No. 02 Civ. 6302 (CM), 2010 WL 363113, at *13 (S.D.N.Y. Feb. 1, 2010) ("Counsel use hourly rates ranging from $90 to $250 for paralegals, from $175 to $550 for associates and other non-partner level attorneys and from $300 to $850 for partners. These rates, though relatively high, fall within the range of those commanded by leading lawyers in the Southern District, particularly those practicing at large firms or with high profiles."). Here, AK typically charged an hourly rate of $500 for both Mr. Deutsch, an AK shareholder, and for Christian V. Cangiano, Esq., an of counsel to AK with 22 years litigation experience, who together performed the bulk of AK's work on this matter. For Mr. Deutsch, this rate reflects a significant discount from his standard rate, which ranged from $625–$645 during the litigation; for Mr. Cangiano, this rate is consistent with his standard rate, which ranged from

7

$500–$525. *See* Deutsch Decl. Ex. B. The rates charged for work performed by AK associate attorneys were also consistent with market norms. Accordingly, the Court finds that the rates that AK charged COR were reasonable. They do not merit any reduction by the Court.

As to the hours worked by AK attorneys, the Court has closely examined the parties' submissions on COR's fee application, consistent with its duty to assure that any fee award is well-justified, reasonable, and proportionate. As part of its review, the Court has also reviewed all filings, transcripts, submissions, and orders in this case. The Court's overall assessment is that the legal work and advocacy of AK on this matter during this two-year period was properly undertaken, reasonable in scope, and executed with agility and skill.

First Standard makes several sets of objections to COR's time entries. First, it identifies what it contends are duplicative entries for time billed conducting legal research, drafting initial disclosures, drafting disclosures to document demands, and reviewing documents for production. Def. Opp. at 3. The Court rejects this claim. As COR explains in its reply brief, most of the similarly phrased time entries First Standard accuses of being duplicative are nothing more than instances in which attorneys began performing a given task on one day and continued performing that task on a later day. *See* Pl. Reply at 4. Similarly, to the extent that First Standard claims that time entries are improperly duplicative because multiple attorneys attended a common event, that argument too is unpersuasive. The assembled case law provides latitude for a second lawyer to attend a conference or deposition; as one other court in this District has observed, "parties are not barred from receiving compensation for work performed by 'an extra lawyer [sent] into court to observe and assist.'" *Hutchinson v. McCabee*, 95 Civ. 5449 (JFK), 2001 WL 930842, at *3 (S.D.N.Y. Aug. 15, 2001) (citing *N.Y. Ass'n for Retarded Children, Inc.*, 711 F.2d at 1146).

Second, First Standard contends that it was unreasonable for AK to task three distinct timekeepers to prepare and conduct depositions. Def. Opp. at 4. This critique, too, gains very limited traction. AK took 10 depositions during this litigation. Although AK assigned three attorneys to do preparation work for depositions, AK's billing record does not reflect duplication of services relating to this project. Indeed, it reflects that, with one potential exception, no more than two attorneys billed for their attendance at any one deposition. That one exception is that three AK attorneys—Mr. Deutsch, Mr. Cangiano, and Christopher Paolino, Esq.—appear to have billed time for attending the April 26, 2018 deposition of Andrew Dorman (although Mr. Paolino does not appear to have billed time capturing the entire deposition). *See* Dkt. 57 (deposition transcript) at 3; Deutsch Decl. Ex. B at 8.

Third, First Standard argues that AK inflated the number of hours its attorneys spent working on various tasks. For example, First Standard contends that, by its calculation, AK's billing records indicate that it took one of its timekeepers more than 13 minutes per page to complete document review for which it billed COR $4,159.50. Def. Opp. at 3. COR responds by correcting this calculation. As COR explains, a correct calculation reveals that the review time was in fact "4.4. seconds per page reviewed." Pl. Reply at 4. On its review, the Court agrees wholly with COR's calculation—First Standard's accusation is simply false. It reflects a regrettable lack of care and precision on the part of First Standard. Based on its close review, the Court does not find evidence that the hours that AK personnel spent on this matter were inflated, excessive, or inefficient.

Out of an abundance of caution, the Court will reduce the fee award sought by COR by 5%. The Court does so mindful of the possibility of minor inefficiencies in the work performed that by their nature may not be clear to a court on review of time sheets. For example, various

time entries describe tasks generically as entailing "research." A court, by nature, however, is ill-equipped to make a granular assessment of whether the time devoted by a legal professional to any stint of legal or factual research was optimally efficient. The Court also notes, above, the singular instance in which three timekeepers billed for attendance at the Dorman deposition. The Court's considered judgment, based on its familiarity with this litigation and its close review of billing records, however, is that a fee reduction of 5% is all that is needed to assure that the fees billed by AK's professionals, all in, are consistent with a rigorous application of the standard of reasonableness.

Finally, as to costs, COR seeks $13,710.43 in costs, principally relating to costs in the following areas: document review contractor fees, deposition transcript fees, legal research fees, court filing fees, and hotel and travel fees incurred in the course of taking depositions. The Court agrees that COR's request is reasonable and amply documented. The Court has no occasion to prune any part of COR's request as it pertains to costs.

## CONCLUSION

For the foregoing reasons, the Court awards COR reasonable attorneys' fees in the total amount of $367,283.78, *i.e.*, 5% less than the amount COR requested. The Court also awards COR an award of costs in the amount of $13,710.43, the amount that COR sought. The total award of fees and costs is therefore $380,994.21. The Court respectfully directs the Clerk of Court to enter a judgment consistent with these calculations and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: March 8, 2019
New York, New York